FILED

2023 Mar-28  PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| GLORIA MAE YOUNG, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.   7:22-cv-00188-HNJ |
| | ) | |
| SOCIAL SECURITYADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant | ) | |

## **MEMORANDUM OPINION**

Plaintiff Gloria Mae Young seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for supplemental security income benefits. The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## **LAW AND STANDARD OF REVIEW**

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 11).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. § 416.905(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process.   *See* 20 C.F.R. § 416.920(a)(4).   The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.   *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.   20 C.F.R. § 416.920(b).   Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."   *Id.* at § 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the listed impairments.   *Id.* at § 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. *Id.*

2

at §§ 416.920(a)(4)(iii), 416.925.   That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.   20 C.F.R. § 416.920(e).   At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.   *See id.* at § 416.920(a)(4)(iv).   If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.   *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.   *Id.* at §§ 416.912(b)(3), 416.920(g).   If the claimant can perform other work, the evaluator will not find the claimant disabled.   *See id.* at § 416.920(a)(4)(v); *see also id.* at

3

§ 416.920(g).   If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"   *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)).   Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).   "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.   Substantial evidence . . . is 'more than a mere scintilla,' . . . [and] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Biestek*, 139 S. Ct. at 1154 (citations omitted).   Therefore, substantial evidence exists even if the evidence

4

preponderates against the Commissioner's decision.   *Moore v. Barnhart*, 405 F.3d 1208,

1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Young, age 57 at the time of the ALJ hearing, protectively filed an application

for supplemental security income benefits on December 9, 2019, alleging disability as

of that date due to diabetes mellitus, gastritis, and duodenitis.   (Tr. 37, 40, 155, 255-

61).   The Commissioner denied Young's claim initially and upon reconsideration, and

Young timely filed a request for an administrative hearing.   (Tr. 155-87, 190-98).   The

Administrative Law Judge ("ALJ") held a hearing on April 6, 2021 (Tr. 35-61), and

issued a decision on May 28, 2021, finding Young not disabled.   (Tr. 12-29).[2]

Applying the five-step sequential process, the ALJ found at step one that Young

did not engage in substantial gainful activity after December 9, 2019, the alleged onset

date.   (Tr. 18).   At step two, the ALJ found Young manifested the severe impairments

of diabetes mellitus with gastroparesis, hypertension, asthma, chronic obstructive

pulmonary disease, obesity, and depression.   (*Id.*).   At step three, the ALJ found that

Young's impairments, or combination of impairments, did not meet or medically equal

any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P,

---

[2] Young filed four previous disability applications.   The Commissioner denied each application, and
she upheld the denial in ALJ opinions dated September 26, 2013; June 11, 2015; January 23, 2017; and
July 30, 2019.   (Tr. 62-154).

Appendix 1.   (*Id.*).

Next, the ALJ found that Young exhibited the residual functional capacity ("RFC")

> to perform medium work as defined in 20 CFR 416.967(c) with the following additional limitations:  She can have occasional exposure to dust, odors, fumes, pulmonary irritants, and temperature extremes; and no exposure to unprotected heights, hazardous machinery, or commercial driving.  She can understand and remember simple instructions; and maintain attention and concentration to carry out simple instructions in at least two hour intervals over an 8 hour work day with customary work breaks.

(Tr. 21).

At step four, the ALJ determined Young could not perform her past work as a dish washer and prep cook.  (Tr. 27).  At step five, the ALJ determined Young could perform a significant number of jobs in the national economy considering her age, education, work experience, and RFC, including produce packer, machine feeder, and lamination assembler.  (Tr. 28).  Thus, the ALJ determined Young did not suffer a disability, as defined by the Social Security Act, since December 9, 2019.  (Tr. 29).

Young timely requested review of the ALJ's decision.  (Tr. 252-54).  On December 17, 2021, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision.  (Tr. 1-6).  On February 14, 2022, Young filed her complaint with the court seeking review of the ALJ's decision.  (Doc. 1).

## ANALYSIS

In this appeal, Young argues the ALJ's residual functional capacity finding lacks substantial evidentiary support.  For the reasons discussed below, the undersigned concludes that contention does not warrant reversal.

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 416.945(a)(4).  The claimant's RFC represents "the most [he or she] can still do despite [their] limitations."  *Id.* at § 416.945(a)(1).  Assessing a claimant's RFC lies within the exclusive province of the ALJ.  *See id.* at § 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); *id.* at § 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ."); *Del Rio v. Berryhill*, No. 3:16-CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

Young argues the ALJ improperly found she possessed the residual functional capacity to perform a limited range of light work.

Medium work involves lifting no more than 50 pounds at a time

7

> with frequent lifting or carrying of objects weighing up to 25 pounds.   If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).   Young argues the ALJ should have found her capable of performing, at most, light work, which would qualify her as disabled pursuant to Grid Rule 202.01 of the Medical-Vocational Guidelines.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Id.* at § 416.967(b).

> According to Young, the ALJ failed to account for all limitations caused by her gastroparesis and related abdominal pain, and if she had accounted for those limitations, she could not have found Young capable of performing medium work.

> A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Wilson*[ *v. Barnhart*], 284 F.3d [1219,] 1225[ (11th Cir. 2002)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021).   A

8

claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability."   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p mandates the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (Mar. 16, 2016).   An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms.   *See* 20 C.F.R. §§ 416.929(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms."   2016 WL 1119029 at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

During the administrative hearing, Young testified "just [her] stomach pain" kept

9

her from working.   (Tr. 41).   She stated her diabetes damaged the lining of her stomach, causing slowed digestion and infrequent bowel movements.   She experiences pain in her stomach every day, but three times a week the pain increases to a level that will "knock [her] on the floor."   (Tr. 42).   She throws up, sweats, and experiences cold and hot flashes.   She visited the emergency room due to the condition the year before the hearing, but she did not visit the emergency room the year of the hearing.   On her worst days, the pain ranks at a level ten, and on a mild day, it ranks at a level five.   She does not take pain medications, as those MAY cause further harm to her stomach.   (Tr. 43-44).

In addition to her stomach problems, she experiences level-eight pain in her right hand and level-five pain in her left hand.   She can lift a gallon of milk with both hands, but doing so causes pain.   She can lift a half gallon with both hands without experiencing pain.   She can open a bottle of water, but she cannot fasten buttons or tie shoes.   (Tr. 44-45).

Her feet constantly swell, resulting in level-eight pain and impaired balance.   She must hold on to steady items as she walks through her apartment.     (Tr. 45-46).

Because of her pain and other symptoms, she lies down half the day.   She sleeps approximately four hours a night, and she arises to use the bathroom approximately five times during the night.   During the daytime hours, she uses the bathroom approximately ten times.   She can sit 20 minutes before needing to stand, and she can

stand 30 minutes before needing to stop and sit.   She can walk ten yards before needing to rest ten to 15 minutes due to shortness of breath.   She performs household chores twice a week, but it takes her all day, and she needs to stop and rest every 15 to 20 minutes.   She cooks simple meals like sandwiches and Hot Pockets.

She shops for herself every other day, but she needs to prop up on a shopping cart, and she can endure only about 15 minutes.   She attends church every Sunday, but she arrives late, and she needs to arise to visit the bathroom during the church service. She possesses a driver's license, but her sister drove her to the administrative hearing, as she feels nervous driving, and she does not own a car.   She and her sister made three stops during the drive, once because she felt she needed to throw up, once because she did throw up, and once because she felt nervous about her sister's driving.   (Tr. 46-50).

She takes mental health medication, but it does not help.   She feels depressed and suicidal daily, and she experiences panic attacks approximately three times each month.   She experienced a panic attack the night before the hearing, and she needed to walk outside to breathe fresh air. (Tr. 50-52).

Young testified her daily routine consists up of waking up; talking to her sister, sons, and mother; sitting on her couch; watching the news or other television programs; trying to prepare food and clean up; sitting back down; and talking to her mother again. She usually goes to bed at approximately 4:00 to 5:00 p.m., and she arises at approximately 4:00 a.m., but she wakes up throughout the night.   She can dress herself

as long as she does not need to fasten buttons.   (Tr. 52-53).

The ALJ found Young's medically determinable impairments could reasonably cause her alleged symptoms, but the medical and other evidence did not support Young's statements about the intensity, persistence, and limiting effects of her symptoms.   (Tr. 22; *see also* Tr. 24 ("Overall, the objective medical evidence does not fully support the claimant's allegations of disabling impairment related symptoms such as hand pain and numbness, difficulty grasping, buttoning, and lifting, abdominal pain, nausea, vomiting, hot flashes, bowel problems, shortness of breath, balance problems, panic attacks, depression, and suicidal thoughts.")).   The ALJ reasoned that even though Young's medical records portrayed emergency department visits for abdominal pain and asthma exacerbation, the objective evidence from those visits, and from Young's primary care records, did not support the existence of long-term disabling symptoms.   The records also did not portray any physical findings in Young's extremities that would support her allegations of hand pain and numbness.   Moreover, Young's diabetes improved over time, and the record did not contain significant mental health findings.   (Tr. 24-25).

In addition to these comments about Young's medical records, the ALJ considered that Young's reported daily activities "further diminish the persuasiveness of her allegations."   (Tr. 25).   Young

testified that she is able to manage her personal care, shop in stores, do

chores, and attend church.  In her Function Report, she indicated that she is able to manage her personal care with some difficulty, take medications without needing reminders, sometimes prepare simple meals, clean, do laundry, ride in a car and leave home, shop in stores twice a week for 20 minutes, pay bills, count change, watch television, talk to others on the phone, spend time with others, go places without needing reminders or someone to accompany her, and get along with others, including authority figures. . . .  At the psychological consultative examination with Dr. Duncan, the claimant reported that she lives alone and is able to manage her personal care without assistance, drive, shop in stores, make correct change, pay bills, cook, and do lite chores . . . .  These activities of daily living are consistent with the ability to perform a range of medium work and are directly contradictory to the claimant's allegation that she is unable to work in any capacity.

(*Id.*).

To accommodate symptoms from Young's asthma, the ALJ restricted Young to occasional exposure to dust, odors, fumes, pulmonary irritants, and temperature extremes.  Because of Young's obesity, medication side effects, and reported symptoms, the ALJ prohibited her from working around unprotected heights, hazardous machinery, and commercial driving.  Because of Young's mental health symptoms, the ALJ limited her to understanding and remembering simple instructions, and maintaining attention and concentration to carry out simple instructions in at least two-hour intervals during an eight-hour day, with customary work breaks.  (*Id.*).

The consistency of Young's complaints with the objective medical evidence and Young's daily activities constituted permissible considerations, *see* 20 C.F.R. §§ 416.929(c)(3), (4); SSR 16-3p, 2016 WL 1119029, at *7, and the ALJ articulated her

findings sufficiently to provide for meaningful review, as she discussed in detail the medical records and daily activities supporting the findings.   Thus, the ALJ followed applicable legal principles in applying the Eleventh Circuit's pain standard and SSR 16-3p.

Moreover, substantial evidence supports the ALJ's finding that the objective medical record does not comport with Young's allegations of disabling symptoms.[3]

Young asserts the ALJ failed to fully account for her severe abdominal pain. However, she cites only one record – from a March 9, 2020, visit to the Northport Medical Center Emergency Department (ED) – to support her assertion.   (Doc. 12, at 5).   On that occasion, Young reported she had visited the ED three days earlier complaining of abdominal pain, and she received a flu diagnosis.[4]   For the March 9 visit, she reported nausea, vomiting, and diarrhea three to four times a day; fever; and sharp, stabbing, abdominal pain and cramping. The pain radiated to her chest, consistent with her history of acid reflux.   (Tr. 1031).

The examiner described her abdomen as soft, non-tender, and nondistended,

---

[3] The court notes Young did not challenge the ALJ's findings regarding her mental health condition. Therefore, the court addresses only whether the ALJ's findings about Young's physical health enjoyed substantial evidentiary support.

[4] ED records confirm Young received a diagnosis of flu-like symptoms after presenting with complaints of vomiting, abdominal pain, and chills on March 6, 2020.   (Tr. 1168-77).   She returned on March 8, 2020, as her epigastric pain continued, and she discharged the same day with an assessment of Influenza B.   (Tr. 1160-67).

with no peritoneal irritation.   (Tr. 1033).   The ED admitted Young to the hospital.
On March 10, an examiner reported the same abdominal findings, and also noted
positive bowel sounds.   (Tr. 1045).   Abdominal scans on both March 9 and March 10
revealed no evidence of bowel obstruction.   (Tr. 1038-39, 1045).   Young discharged
on March 11, 2020, in stable condition, and with instructions to engage in activity and
advance her diet as tolerated, and to follow up within a week with her primary care
physician.   (Tr. 1038-39).

Those records document Young's subjective complaints of abdominal pain, but
they neither provide objective medical findings to elucidate the severity of her condition
nor reflect a condition persisting twelve months or more.[5]   Moreover, Young did not

---

[5] The record contains evidence of past hospitalizations and ED visits for abdominal pain in 2012,
2013, and 2015.   (Tr. 390-568).   Those records demonstrate Young received a diagnosis of
gastroparesis as early as 2015, and she experienced symptoms that occasionally warranted
hospitalization.   But records regarding her symptoms in 2012, 2013, and 2015 does not bear on her
functional status as of December 9, 2019, the alleged onset date in this case.   The ALJ decision most
recently preceding the filing of this case – the Commissioner's apparently uncontested July 30, 2019,
finding that Young did not suffer a disability pursuant to a previous application (Tr. 139-54) – binds
the court.   42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security
after a hearing shall be binding upon all individuals who were parties to such hearing.   No findings
of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal,
or governmental agency except as herein provided.").   Therefore, the court will not consider evidence
regarding Young's condition that predates July 30, 2019.

Moreover, the mere fact that Young has suffered from gastroparesis for years bears little
relevance to the disability assessment, as the diagnosis alone says nothing of the severity of her
symptoms or resulting functional limitations.   *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir.
2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore
questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and
shoulder separation.   However, the mere existence of these impairments does not reveal the extent
to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Mansfield
v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability) (emphasis
in original); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected

15

receive treatment for gastroparesis from her primary care physicians at Whatley Health Services.   Therefore, the March 2020 ED records represent Young's only treatment for gastroparesis during the relevant period.   No objective evidence supports the severity of gastrointestinal symptoms Young alleged.

Young's other medical records from the relevant period also do not contain substantial evidence demonstrating she suffered other conditions that resulted in greater functional limitations than the ALJ assessed.   She received treatment from Whatley Health Services for diabetes and hypertension, but the Whatley records demonstrate that medication, after some adjustments, adequately controlled those conditions.   (Tr. 1069, 1075, 1079, 1111, 1116).

On November 14, 2020, Young presented to the DCH Regional Medical Center ED with shortness of breath and chest tightening.   ED physicians assessed an acute asthma attack and discharged her the same day. (Tr. 1151-59).   Young underwent hospitalization from January 13, 2021, to January 14, 2021, for a urinary tract infection and ureteral stone (Tr. 1123-50).   However, those hospital visits resulted from acute conditions that did not recur or require continued treatment.

The opinions of state agency medical consultants also provided substantial evidentiary support for the ALJ's RFC assessment.   Dr. Richard Whitney reviewed

---

diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability.").

Young's file on February 19, 2020.   He stated Young experienced pain, malaise, sustained concentration and persistence limitations, and limitations in the ability to adapt.   Her medically determinable impairments reasonably could produce her alleged symptoms, but the objective medical evidence did not substantiate her statements about the intensity, persistence, and functionally limiting effects of her symptoms.   Rather, Dr. Whitney considered Young's statements about her symptoms only partially consistent with the medical evidence as a whole.

Dr. Whitney completed a Residual Functional Capacity assessment indicating Young could occasionally lift 50 pounds and frequently lift 25 pounds.   She could stand and/or walk for six hours in an eight-hour workday, and she could sit for the same amount of time.   She could perform unlimited pushing and pulling movements, including the operation of hand and/or foot controls, within her lifting restrictions. She had no postural, manipulative, visual, or communicative limitations.   Due to a 2016 left ankle fracture, she should avoid concentrated exposure to hazards such as machinery and heights, but she otherwise experienced no environmental limitations. Dr. Whitney observed Young's medical records included no history of gastrointestinal problems for several years; medications appeared to control her diabetes and asthma; and she experienced no significant problems during the year preceding the examination. (Tr. 164-66).

On September 17, 2020, after Young requested reconsideration of her claim at

the administrative level, Dr. E. Russell March, Jr., evaluated her file.   Like Dr. Whitney, Dr. March determined Young suffered from pain, malaise, sustained concentration and persistence limitations, and limitations in the ability to adapt, and he considered Young's subjective complaints only partially consistent with the record medical evidence, as the evidence did not substantiate her statements about the intensity, persistence, and functionally limiting effects of her symptoms.   Dr. March rendered the same Residual Functional Capacity finding as Dr. Whitney.   In reaching his assessments, Dr. March specifically considered the records from Young's March 9, 2020, ED visit and subsequent hospital stay. (Tr. 182-84).

The ALJ found Dr. Whitney's and Dr. March's opinions persuasive, as the doctors' findings and other medical records supported their opinions.   However, due to Young's reported asthma symptoms, the ALJ imposed additional limitations on occasional exposure to dust, odors, fumes, pulmonary irritants, and temperature extremes.   (Tr. 26-27).

Young asserts the state agency medical consultants' opinions cannot constitute substantial evidence to support the ALJ's RFC finding, as those doctors did not examine her.   (Doc. 12, at 9-10).   That assertion lacks a legal foundation, as Social Security regulations require an ALJ to consider such opinions as she would any other medical opinion.   20 C.F.R. § 416.913a(b)(1) (An ALJ "must consider [prior administrative medical findings and medical evidence from a Federal or State agency

18

medical consultant], as appropriate, because our Federal or State agency medical . . . consultants are highly qualified and experts in Social Security disability evaluation."); *see also Gordon v. Saul*, No. 8:18-CV-829-T-SPF, 2019 WL 4254470, at *5 (M.D. Fla. Sept. 9, 2019) (citing 20 C.F.R. § 416.913a(b)) ("The opinions of agency [medical] consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source.").

As with any medical source, the ALJ should not give the consultants' opinions "any specific evidentiary weight, including controlling weight."   20 C.F.R. § 416.920c(a).   Rather, the ALJ should primarily assess the extent to which the objective medical evidence supports the opinions, and the consistency of the opinions with other medical and nonmedical sources.   *Id.* § 416.920c(c)(1)-(2).   The ALJ may also consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations.   *Id.* § 416.920c(c)(3)-(5).   The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file.   *Id.* § 416.920c(c)(3)(v).   The ALJ "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and

evidentiary requirements."   *Id.* at § 416.920c(c)(5).

The ALJ in this case followed the regulatory requirements by considering Dr. Whitney's and Dr. March's opinions persuasive due to their supportability and consistency with the medical record.   Substantial evidence, as already discussed, supported the ALJ's determination.   Young asserts those doctors "did not have access to treatments from Whatley Health Services and DCH Regional Medical Center dated after March 30, 2020."   (Doc. 12, at 9).   Notwithstanding that observation, no records dated after March 30, 2020, support more restrictive limitations than the ALJ imposed. Therefore, the medical consultants' access or lack of access to records post-dating March 30, 2020, bears no relevance.

Young also argues the ALJ "erred in failing to acknowledge that [she] had never performed medium work."   (Doc. 12, at 10).   The ALJ classified Young's past work as both a dish washer and prep cook as medium level work (Tr. 27), yet the vocational expert testified Young performed those jobs at the light exertional level.   (Tr. 56). However, even if Young never performed medium level work in the past, the ALJ found she possesses the capacity for such work, and as discussed herein, that finding enjoys substantial evidentiary support.   Therefore, the ALJ did not err in evaluating Young's past work.

Finally, Young argues substantial evidence does not support the ALJ's findings about the relationship between her daily activities and her ability to work, as the ALJ

20

failed to mention some of Young's activity limitations, and "[t]he level of physical activity Ms. Young testified to is not consistent with medium work."   (Doc. 12, at 9). The court agrees the ALJ's description of Young's activities does not fully depict her level of alleged limitations.

The ALJ stated Young testified she could "do chores," but more accurately, Young stated she performed household chores only twice a week, she needs to rest every 15 to 20 minutes, and she can prepare only simple meals such as sandwiches and Hot Pockets.   The ALJ declared Young could shop in stores, but Young's testimony clarifies she can only shop 15 to 20 minutes at a time, and she must prop up on a shopping cart.   The ALJ asserted Young could manage her personal care, yet she did not mention Young's testimony that she could not fasten buttons on her clothing.   The ALJ professed Young could attend church, but she did not account for Young's need to arrive late or arise during the service to visit the bathroom.

The ALJ's summary of Young's Function Reports also does not provide a full picture of the extent of Young's alleged limitations.   The ALJ expressed Young could perform care personal tasks "with some difficulty" (Tr. 25), whereas Young actually indicated a complete inability to sleep, bathe, care for her hair, or eat when she experiences pain.   (Tr. 305, 330).   The ALJ declared Young could sometimes prepare simple meals, but Young more specifically indicated she prepared meals two times a week, for five minutes, and she otherwise eats leftovers.   (Tr. 25, 306).   Young

asserted she can clean and do laundry, but it takes her all day.   (Tr. 306).   Young stated she spends time with others, but the contact occurs mostly over the phone, and seeing others in person may make her feel sick.   (Tr. 308, 334).   On her first Function Report, she declared she can get along with authority figures, but on the second Function Report, she expressed she could not do so.   (Tr. 310, 335).

The ALJ stated Young told Dr. Duncan during the June 9, 2020, consultative psychological examination that she could drive, but the examination report reflects she does not drive much despite possessing a driver's license.   (Tr. 25, 1100).   The ALJ also provided Young can manage her personal care without assistance, but more precisely, Young reported to Dr. Duncan that she can take care of "some" of her personal needs without help from others.   (Tr. 25, 1101).

However, the ALJ's overstatement of some of Young's daily activities does not deprive the ALJ's opinion of substantial evidentiary support.   The ALJ did not rely solely upon her assessment of Young's activities to support the RFC finding.   Rather, she found that "claimant's activities of daily living further diminish the persuasiveness of her allegations."   (Tr. 25).   Because substantial medical evidence – including Young's medical records, the state agency medical consultants' opinions, and the vocational expert's testimony – supported the ALJ's RFC finding, any misstatements by the ALJ of Young's daily activities do not result in error.   *See Seagle v. Colvin*, No. 2:15-CV-00538-LSC, 2016 WL 1613053, at *6 (N.D. Ala. Apr. 22, 2016) ("[E]ven

22

without the ALJ's consideration of Plaintiff's daily activities, there was ample evidence undermining Plaintiff's credibility, as discussed above, such as Plaintiff's limited and conservative medical treatment, normal examination findings, and poor work history."); *Hunter v. Colvin*, No. 4:13-CV-0391-SLB, 2014 WL 4458887, at *9-10 (N.D. Ala. Sept. 8, 2014) (contrary to the ALJ's conclusion, the claimant's daily living activities did not undermine her subjective complaints; however, substantial evidence nevertheless buttressed the ALJ's decision because he also relied upon sufficient objective medical evidence to render his adverse credibility determination).

In summary, the ALJ followed applicable law in assessing Young's RFC, and substantial evidence supported the RFC finding.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 28th day of March, 2023.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE